```
              United States District Court
                District of Massachusetts
```

_____
                                    )
UNITED STATES OF AMERICA,           )
                                    )
         v.                         )
                                    )     Criminal No.
DAN SMITH,                          )     07-10143-NMG
                                    )
         Defendant.                 )
_____)

**MEMORANDUM & ORDER**

**GORTON, J.**

Defendant Dan Smith ("Smith") has moved this Court to suppress evidence of a firearm, ammunition and cash discovered and seized from a car parked near an apartment which had just been searched pursuant to a warrant.

**I.   Background**

In December, 2006, the Taunton Police Department and the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") commenced an investigation of possible drug dealing at an apartment located on the second floor of 227 Washington Street in Taunton, Massachusetts ("the Apartment").  On December 27, 2006, Taunton Police Officer Troy Medeiros ("Medeiros") submitted an application for a search warrant for the Apartment based on information contained in a supporting affidavit.

In his affidavit, Medeiros stated that during the week of

-1-

December 10, 2006, a cooperating witness ("CW") told Medeiros that a man known as "D", later identified as Smith, was dealing drugs from the Apartment.  The CW had previously been inside the Apartment where he had purchased crack cocaine from Smith.  The CW also stated that "D" drove a red Mazda with registration number 51ZV89 ("the Mazda").

Medeiros also reported in the affidavit that he conducted surveillance of the Apartment later that week.  He had observed heavy foot traffic, i.e., persons entering the Apartment via the fire escape and leaving a few minutes later, which he recognized to be consistent with drug dealing activity.  Medeiros also observed the Mazda described by the CW parked in the driveway.  Medeiros directed the CW to call Smith and arrange a controlled purchase. The CW was searched, given a sum of cash and sent to the Apartment.  He returned with a substance that tested positive for crack cocaine which the CW said he purchased from "D".

Based on that information, a warrant was issued on December 27, 2006 to search for narcotics and related paraphernalia "at 227 Washington St 2nd Fl" in Taunton, Massachusetts.

On December 28, 2006, while conducting drive-by surveillance of the Apartment, Medeiros observed the Mazda parked in the driveway.  A black man, who fit the description of Smith, got out of the Mazda and approached a silver vehicle also in the driveway. Medeiros witnessed an interaction between Smith and the

occupant of the silver car and believed it to be a drug deal. He did not see an exchange take place. After the interaction, Medeiros saw Smith return to the area of the Mazda. The silver car left the area.

Medeiros then returned to Police Headquarters and assembled a team to execute the search warrant for the Apartment. The team returned to and entered the Apartment, finding a female and three males, including Smith, inside. The officers handcuffed the individuals. The female told the officers that she owned the silver car in the driveway.

The search of the Apartment uncovered crack cocaine, .32 caliber bullets, .22 caliber bullets, a digital scale, a prescription bearing Smith's name and a black bag containing cutting agent, a holster for a handgun and paperwork from Morton Hospital bearing Smith's name.[1]

Nearby Smith the officers recovered a set of car keys. Taunton Police Detective Christopher Williams ("Williams") questioned Smith about the keys. Smith told Williams that the keys were for the Mazda parked in the driveway, which was registered to his sister. Williams told Smith that he was going to search the car. At the evidentiary hearing on this motion, Williams testified that he believed he had the authority to

---

[1] The government lists the .32 caliber bullets as being in the black bag but the inventory from the search warrant lists them independent of the black bag.

search the car with or without Smith's consent and that when he told Smith he was going to search his car he was not looking for Smith's consent but rather for resistance to confirm Williams's suspicions.  Upon Williams's announcement that he would search the Mazda, Smith shrugged and said "go ahead".  Williams proceeded to search the vehicle.

In the trunk of the Mazda, Williams found a .40 caliber magazine inside a book bag, a .44 caliber pistol, .44 caliber ammunition and .38 caliber ammunition.  Williams then searched the vehicle's interior and discovered medication bottles bearing Dan Smith's name, $2,380 inside a wallet also containing identification for Dan Smith, a probation slip bearing Dan Smith's name and an additional $1,351.  Smith was then transported to the Taunton Police station for booking.

### II. **Motion to Suppress (Docket No. 23)**

Smith moves the Court to suppress the evidence of the firearm, ammunition and cash found in the Mazda because 1) the police did not have a warrant to search the car, 2) Smith did not consent to the search, 3) the automobile exception does not apply and 4) the police did not have probable cause to search the car.

    **A.   The Warrant and Curtilage**

        **1.   Legal Standard for Warrants**

The Fourth Amendment protects against unreasonable searches

and seizures by requiring, in most cases, a valid warrant. Bilida v. McCleod, 211 F.3d 166, 171 (1st Cir. 2000). A warrantless search or seizure is presumptively unreasonable and will be upheld only if an exception to the warrant requirement applies. Id. The authority granted by a warrant for the search of a premises is limited by the description in the warrant and does not extend to additional areas. United States v. Bonner, 808 F.2d 864, 868 (1st Cir. 1986). When a warrant is issued for a "premises", however, the First Circuit has interpreted that term broadly. See United States v. Asselin, 775 F.2d 445 (1st Cir. 1985) (holding that the search of a disabled automobile adjacent to carport was permissible during search of "premises" pursuant to warrant).

    **2. Application**

The search warrant issued in this case authorized a search for narcotics "at 227 Washington St 2nd Fl Taunton MA". In its brief, the government asserts that Smith's car was within the curtilage of the Apartment and that it was therefore within the scope of the warrant. Its argument, however, unnecessarily complicates the analysis. The key inquiry is whether the warrant permitted the search of any property or premises outside of the apartment, not whether the car was within the curtilage.

The government cites numerous cases for the proposition that a vehicle parked in a driveway is within the scope of a search

warrant for the residence, but all of those cases involve warrants issued for a "premises" or "property", not a specific unit within an apartment building. The warrant for Smith's Apartment was limited to the second floor of the two-family house in question and did not permit a search of the "premises" or "property" at a certain address. Cf. United States v. Asselin, 775 F.2d 445 (1st Cir. 1985). The government notes that the search warrant includes the word "property" in its introduction, to wit: "I find that there is PROBABLE CAUSE to believe that the property described below" etc. The word "property" in that context, however, refers to the object of the warrant and not to the "premises" or "property" being searched.

The government cites no authority and this Court has found none to indicate that all search warrants for a particular residence include within their scope authorization to search the entire premises. In fact, warrants often specify that curtilage and/or motor vehicles may be searched, indicating that such areas or items are not automatically included within the scope of a warrant for a residence. See, e.g., Quiles v. Kilson, 337 F. Supp. 2d 224, 227 (D. Mass. 2004)(involving a warrant authorizing search of the Apartment, including the "curtilage"). Because the warrant in this case was limited to the Apartment itself, it did not include property outside the Apartment and thus the warrant did not authorize the search of the nearby Mazda.

**B.   Consent**

   **1.   Legal Standard for Consent**

A search conducted pursuant to valid consent is constitutionally permissible even in absence of a warrant or probable cause. Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973). When a prosecutor relies on consent to support the validity of a search, it is his burden to prove that consent was freely and voluntarily given. Id. The determination is made after considering the totality of circumstances. Id. at 227. A simple response of "okay" to an officer's claim of authority to search is not voluntary consent. United States v. Weidul, 325 F.3d 50, 53-54 (1st Cir. 2003).

   **2.   Application**

Memoranda of the parties do not elucidate the circumstances surrounding Smith's alleged consent to the search. At the evidentiary hearing, however, Williams testified that he told Smith he was going to search the Mazda not for the purpose of gaining consent but as a police tactic. In response to that statement, Smith shrugged and said "go ahead". Looking at the totality of the circumstances, Williams's statement, rather than a question, demonstrates that Williams did not seek (nor did Smith provide) consent to search the Mazda.

The government contends that, even if Williams did not seek consent, Smith gave it by virtue of his shrug and the comment "go

ahead". The government is incorrect. The First Circuit has made clear that acquiescence in response to a show of authority is not the equivalent to consent. United States v. Weidul, 325 F.3d 50, 53-54 (1st Cir. 2003). In Weidul, a police officer stated to a resident, "I am going to look in here," referring to a room in the house. Id. at 53. The resident replied, "Okay," and the officer entered the room and found a gun. Id. The court held that the resident did not voluntarily consent to the search because a reasonable person in her shoes would have understood the officer to be asserting lawful authority to conduct the search. Id. at 54. Her response was merely acquiescence. Id. The present case is analogous. When Williams stated his intent to search the Mazda, Smith acquiesced to authority. He did not consent to the search.

    **C.    The Motor Vehicle Exception**

        **1.    Legal Standard for the Motor Vehicle Exception**

The motor vehicle exception permits the warrantless search of a motor vehicle when supported by probable cause. Coolidge v. New Hampshire, 403 U.S. 443, 460 (1971). The justification to conduct a warrantless search of a vehicle does not depend on the reviewing court's assessment that the car would have been driven away. See Michigan v. Thomas, 458 U.S. 259, 261 (1982). Nor does any particular exigency need to exist. United States v. Panitz, 907 F.2d 1267, 1271-72 (1st Cir. 1990).

### 2. The Motor Vehicle Exception and Private Property

Smith argues that the motor vehicle exception does not apply to cars parked on private property. The government responds by citing a string of cases that hold that a motor vehicle may be searched upon a finding of probable cause. All of the cited cases (with one exception noted below) involve vehicles stopped on the roadway or parked in other public places. See, e.g., United States v. McCoy, 977 F.2d 706, 710 (1st Cir. 1992)(holding the search of a van permissible in a bank parking lot); United States v. Panitz, 907 F.2d 1267, 1271 (1st Cir. 1990)(holding that a warrantless search is permissible if a vehicle is stopped on roadway or parked in a public place); United States v. Fiasconaro, 315 F.3d 28, 37 (1st Cir. 2002)(upholding a search in the context of a traffic stop); United States v. Lopez, 380 F.3d 538 (1st Cir. 2004) (assuming without discussing that the motor vehicle exception applies when the searched car is parked in a condominium complex parking lot). Although many of the cited cases use expansive language to suggest that probable cause is the only requirement when an officer searches a vehicle, they also contain restrictive language limiting warrantless searches of vehicles to those found on roadways or in other public places. See, e.g., Panitz, 907 F.2d at 1272 ("the existence of probable cause justifies a warrantless seizure and reasonable search of a motor vehicle lawfully stopped in transit or parked in a public

place..."); McCoy, 977 F.2d at 710 ("probable cause alone justifies a warrantless search of a motor vehicle seized without a warrant while parked in a public place").

The Supreme Court has also suggested that the motor vehicle exception does not apply to cars parked in residential locations. E.g., Coolidge v. New Hampshire, 403 U.S. 443 (1971) (declining to uphold a search where a vehicle is unoccupied, parked on private property and beyond the scope of a valid search incident to an arrest). The rationale and scope of the automobile exception has changed since the Coolidge decision was rendered, however. See, e.g., Maryland v. Dyson, 527 U.S. 465 (1999)(per curiam)(holding that the automobile exception has no separate exigency requirement); California v. Carney, 471 U.S. 386, 392-93 (1985)(holding that there are two justifications for the automobile exception: the inherent mobility *of* automobiles *and* the lesser expectation of privacy because of "the pervasive regulation of vehicles capable of traveling on the public highways"). Moreover, in a per curiam decision, the Supreme Court held that a warrantless search of an automobile in the driveway of a farmhouse did not violate the Fourth Amendment although it is unclear whether the defendant had any connection to the farmhouse. Pennsylvania v. Labron, 518 U.S. 938 (1996).

At least five Circuit Courts have held that the motor vehicle exception applies even when a car is parked on a private

-10-

Case 1:07-cr-10143-NMG   Document 30   Filed 02/01/08   Page 11 of 16

driveway. See, e.g., United States v. Hines, 449 F.3d 808 (7th Cir. 2006); United States v. Brookins, 345 F.3d 231 (4th Cir. 2003); United States v. Flatden, 230 F.3d 1083 (8th Cir. 2000); United States v. Markham, 844 F.2d 366, 368 (6th Cir. 1988); United States v. Hamilton, 792 F.2d 837, 843 (9th Cir. 1986).[2] The Fourth Circuit has suggested, however, that "heightened privacy interests may be triggered when a vehicle is encountered on private property", Brookins, 345 F.3d at 237 n.8, and the Fifth Circuit has stated that the motor vehicle exception "may not apply when a vehicle is parked at the residence of the criminal defendant challenging the constitutionality of the search" United States v. Fields, 456 F.3d 519, 525 (5th Cir. 2006).

The First Circuit Court of Appeals has had at least one occasion to decide whether to apply the motor vehicle exception to an automobile parked in a private driveway. In United States v. Moscatiello, 771 F.2d 589 (1st Cir. 1985), the First Circuit upheld the search of an automobile parked in a private driveway, stating that, although it was parked on private property, it was not parked on the defendant's property and furthermore that the

---

[2]The government cites an additional case from the Fourth Circuit, but that case, decided before the Supreme Court made clear that the motor vehicle exception did not require a showing of exigency, specifically states that the search was permissible because the defendant was about to drive off with the suspected contraband. United States v. Shepherd, 714 F.2d 316, 319-20 (4th Cir. 1983).

-11-

police had pursued the automobile into the driveway (rather than it having been parked there indefinitely). Id. at 599-600, vacated on other grounds by Murray v. United States, 487 U.S. 533 (1988). In this case, it is unclear whether 227 Washington Street served as Smith's residence although he declared in an affidavit that it was not. This Court need not decide the scope of the motor vehicle exception or whether the Mazda was parked at Smith's residence because, notwithstanding those contingencies, there was no probable cause to search the vehicle.

**D.   Probable Cause**

**1.   Legal Standard**

Probable cause to search a vehicle requires that at the time of the search, the officer had "reasonably trustworthy information of supporting facts and circumstances" to justify the search. United States v. Infante-Ruiz, 13 F.3d 498, 502 (1st Cir. 1994). Probable cause exists when there is a fair probability that contraband or evidence will be found in the place described. United States v. Moore, 790 F.2d 13, 15 (1st Cir. 1986). A probable cause determination should be based on the totality of the circumstances. Illinois v. Gates, 462 U.S. 213 (1983).

**2.   Application**

The government asserts the following sources of support for a finding of probable cause:

### a. Pre-raid Observations

Prior to obtaining a search warrant and in preparation for executing it, Medeiros conducted surveillance on the Apartment and observed heavy foot traffic in and out, which indicated the likelihood of drug activity. The activity Medeiros observed took place <u>inside</u> the apartment and did not involve the Mazda. Although the CW told Medeiros that Smith drove a red Mazda, he did not indicate that Smith used the Mazda to deliver drugs, reporting instead that Smith sold drugs out of the Apartment. On the day the police executed the search warrant, Medeiros also saw a man later identified as Smith get out of the Mazda and approach a silver car in his driveway. Medeiros stated that he believed that he was witnessing a drug deal but Medeiros did not see an exchange, Smith did not re-enter the Mazda and the owner of the silver car turned out to be the female later arrested in the Apartment. Because the pre-raid observations did not connect contraband or evidence of a crime to the Mazda, they are insufficient to establish probable cause to search the Mazda. <u>See</u> <u>United States</u> v. <u>Garcon</u>, 2008 WL 60405, at *12 (S.D. Fla. Jan. 3, 2008)(holding that the police lacked probable cause and noting that the police had not observed the defendant transporting, storing or conducting any drug business or other illegal activity from his vehicle); <u>United States</u> v. <u>Gunning</u>, 405 F. Supp. 2d 79, 83 (D. Mass. 2005)(allowing a motion to suppress

because, although police had probable cause relating to general criminal activity, that was not sufficient to justify a warrantless search or seizure of an automobile). Cf. United States v. Brown, 923 F.2d 109, 110 (8th Cir. 1991)(anonymous tip that defendant was dealing drugs out of a car, confirmed by police observation of hand movements and brief exchange in vehicle established probable cause for a warrantless search of the vehicle).

### b. Evidence of Drugs and Firearms Seized From the Apartment

In the search of the Apartment, the police uncovered crack cocaine, a digital scale and ammunition as well as a black bag containing cutting agent, a holster and paperwork bearing Smith's name. The government asserts that those discoveries made it probable that additional contraband, such as a gun, would be found in the Mazda. The finding of contraband in one location occupied by a defendant does not, however, establish probable cause that contraband will be found in every location frequented by the defendant. See United States v. Hogan, 25 F.3d 690, 694 (8th Cir. 1994)(holding that information that defendant drove a truck to work where he distributed drugs and discovery of small amount of marijuana, two scales, weapons, a police scanner and $5,600 in cash during search of home did not establish probable cause to search second automobile owned by defendant). Even though the police found a bag with a holster and paperwork

-14-

bearing Smith's name, they had no particular facts to link, by a fair probability, his vehicle to additional contraband. See United States v. Holly, 219 F. Supp. 2d 117, 125-26 (D.D.C. 2002)(holding that police lacked probable cause to search a vehicle after a cursory search of the defendant's apartment revealed ammunition but no firearm). Cf. United States v. Dickerson, 2008 WL 192295 (1st Cir. Jan. 24, 2008)(holding that police had probable cause to search car where they found drugs in defendant's house, defendant was evasive about owning the searched car, an informant had told police that defendant carried a handgun in a hidden console in his car and police officer observed alterations in undercarriage of car indicating a hidden console); United States v. Spenser, 1 F.3d 742, 746 (9th Cir. 1993)(holding that police had probable cause to believe that a vehicle contained a firearm because the defendant was wearing a holster and made suspicious movements while sitting in the vehicle); United States v. Wider 951 F.2d 1283, 1286 (D.C. Cir. 1991)(finding probable cause where the defendant was on foot, drugs packaged for sale were found on his person and his car was parked nearby). Consequently, finding contraband in the apartment did not establish probable cause to search the Mazda.

        **c.    The Knowledge and Experience of the Officers**

The government also asserts that the searching officers believed, based on their knowledge and experience, that drug

dealers typically make deliveries of narcotics in vehicles and that it was therefore probable that Smith's Mazda contained contraband.  Probable cause must be based, however, on supporting facts and circumstances.  <u>Infante-Ruiz</u>, 13 F.3d at 502.  Probable cause may not be based on "conventional wisdom" or reputation.  <u>Id.</u>  Without specific information linking the Mazda to contraband or evidence of a crime, the police did not have probable cause to search the Mazda.

Because the search warrant did not include the Mazda within its scope, Smith did not give his consent to search the car and there was no probable cause to search the car, the defendant's motion to suppress will be allowed.

**ORDER**

In accordance with the foregoing, the defendant's Motion to Suppress Evidence (Docket No. 23) is **ALLOWED**.

**So ordered.**

/s/Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated February 1, 2008