# United States District Court
# District of Massachusetts

| | |
|---|---|
| United States of America,<br><br>v.<br><br>Dan Smith,<br><br>Defendant. | Criminal Action No.<br>07-10143-NMG |

## MEMORANDUM AND ORDER

**GORTON, J.**

In March, 2009, this Court sentenced Dan Smith ("defendant") to 60 months in prison and four years of supervised release. The sentence was imposed pursuant to a Fed. R. Crim. P. 11(c)(1)(c) binding plea agreement and the crimes to which defendant pled were Conspiracy to Possess with Intent to Distribute Cocaine and Cocaine Base, Possession with Intent to Distribute Cocaine Base and Possession of Ammunition as a convicted felon.

The drugs that were seized from defendant were analyzed by laboratory chemist Annie Dookhan ("Dookhan"), who later pled guilty to multiple instances of tampering with evidence, which included adding known controlled substances to samples thereby resulting in positive tests. Defendant now contends that he would not have pled guilty had he been aware of the misconduct that took place at the Massachusetts Department of Public

Health's William A. Hinton State Laboratory ("Hinton Lab") and moves to withdraw his plea and vacate his conviction, pursuant to 28 U.S.C. § 2255. For the reasons that follow, defendant's motion will be denied.

I. **Background**

In or about December, 2006, a cooperating witness, ("the CW") informed law enforcement officers of defendant's drug operation, located at 227 Washington Street, Taunton, Massachusetts ("the residence") and admitted to purchasing crack cocaine from defendant on at least two previous occasions. Based on that information, officers set up surveillance outside the residence where they observed heavy foot traffic consistent with a busy drug establishment. Officers also obtained telephone records, which revealed a high volume of calls between defendant and co-conspirators "proving drug dealing." They arranged for the CW to carry out a controlled purchase from defendant. Officers provided the CW with $40 buy money and directed him/her to contact defendant. Officers watched as the CW entered the residence and emerge a few minutes later. After the purchase was complete, the CW handed officers a substance that field tested positive for cocaine.

On December 28, 2006, officers executed a warrant to search the residence. Upon entering, they encountered defendant sitting on the living room couch and a woman, later identified

as Jillian Richards ("Ms. Richards"), standing in the kitchen. As the officers approached, Ms. Richards attempted to conceal a suspicious substance from officers by throwing it all over the kitchen. Officer retrieved the substance from the various kitchen surfaces and then searched the rest of the residence.

A full search of the apartment uncovered: (1) a black bag with a firearm holster, (2) two bottles of a cutting agent, (3) paperwork from Morton Hospital under the name of Dan Smith, (4) 50 Remington rounds of ammunition, (5) cocaine on the stove and in the oven, (6) crack cocaine on the kitchen table and floor, (7) a pill bottle with 13 rounds of ammunition, (8) a cellular phone, (9) a prescription under the name of Dan Smith and (10) a small digital scale. Officers eventually sent the drugs to the Hinton lab where chemists Annie Dookhan and Peter Piro confirmed their identity as cocaine. The official drug certificates identify Dookhan as the primary analyst.

After the search, Ms. Richards provided a statement wherein she confirmed that defendant was cooking crack cocaine in the kitchen and described defendant's drug dealing operation as a thriving business that served at least 50 customers each day. Ms. Richards admitted to her involvement in the operation and pled guilty in Bristol County Superior Court, where she received a sentence of two years to two years and one day.

In October, 2008, a Second Superseding Indictment charged defendant with Conspiracy to Possess with Intent to Distribute Cocaine in violation of 21 U.S.C. § 846, Possession with Intent to Distribute Cocaine Base in violation of 21 U.S.C. § 841(a)(1) and Felon in Possession of Ammunition in violation of 18 U.S.C. § 922(g)(1). Shortly thereafter, the government and defendant executed a binding plea agreement, pursuant to Fed. R. Crim. P. 11(c)(1)(c), whereby defendant agreed to plead guilty to all three counts in exchange for a sentence of incarceration for a period of 60 months and four years of supervised release. Absent the plea agreement, defendant would have faced a sentencing guideline range of 95-115 months. He raised no question concerning the chemical composition of the drugs nor did he request additional testing.

Defendant served his term of incarceration and then, in March, 2013, approximately 22 months into his term of supervised release, defendant filed the instant motion to withdraw his guilty plea and vacate his conviction. Defendant argues that his plea was involuntary insofar as he would not have pled guilty had he known about Dookhan's misconduct.

## II. Analysis

### A. Legal Standard

Title 28 U.S.C. § 2255 enables a prisoner in custody to move the court that imposed his sentence to vacate, set aside or

-4-

correct the sentence if it was (1) imposed in violation of the Constitution or laws of the United States or by a court that lacked jurisdiction, (2) in excess of the maximum authorized by law or (3) otherwise subject to collateral attack. 28 U.S.C. § 2255(a); David v. U.S., 134 F.3d 470, 474 (1st Cir. 1998). The defendant bears the burden of establishing the need for relief in each of those circumstances. Id.

As a general rule, a voluntary and intelligent plea, made with the advice of competent counsel, may not be collaterally attacked. See Mabry v. Johnson, 467 U.S. 504, 508 (1984); see also Moreno-Morales v. U.S., 334 F.3d 140, 145 (1st Cir. 1998) ("Evidentiary hearings on § 2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that a evidentiary hearing is warranted."). However, if a prisoner's claim is predicated on evidence unavailable to him at the time of the plea, he can collaterally attack his sentence on the ground that his plea was involuntary (i.e., unknowing, unintelligent and insufficiently aware). Ferrara v. U.S., 456 F.3d 278, 289 (1st Cir. 2006). A defendant must prove two elements in order to vacate a guilty plea as involuntary:

> First, he must show that some egregiously impermissible conduct (say, threats, blatant misrepresentations, or untoward blandishments by government agents) antedated the entry of his plea. Second, he must show that the misconduct influenced

>his decision to plead guilty or, put another way, that it was material to that choice.

Id. at 290 (internal citations omitted). The reviewing court must consider the "totality of the circumstances surrounding the plea." Id. Relevant factors include whether the undisclosed information (1) would have undermined the facts which formed the basis of the guilty plea, (2) could have discredited or impeached a witness whose credibility may have determined the outcome at trial, (3) merely adds to evidence already in defendant's possession, (4) would have affected defense counsel's decision to recommend pleading guilty and (5) was eclipsed by the benefits of pleading guilty. Id. at 294 (internal citations omitted).

### B. Application

Defendant contends that his plea was involuntary. He maintains that had he known that his counsel would have been able to impeach the credibility of the government's drug analyst and cast doubt upon the chemical composition of the drugs, he would not have pled guilty to any of the charges or, at the very least, he might have negotiated a more favorable plea bargain. Defendant acknowledges that Dookhan's misconduct had no affect on the ammunition recovered from the residence but insists that he only pled guilty to that charge as part of the overall plea agreement.

## 1. **Materiality**

The Court begins its analysis with the second inquiry under the Ferrara framework. To satisfy the materiality prong, defendant "must show a reasonable probability that, but for the misconduct, he would not have pled guilty..." Hill v. Lockhart, 474 U.S. 52, 59 (1985). A reasonable probability is a probability "sufficient to undermine confidence in a belief" that defendant would have pled guilty. Ferrara, 456 F.3d at 294. Defendant's "subjective, post hoc assertions" are not dispositive. U.S. v. Merritt, 755 F.3d 6, 10 (1st Cir. 2014). Rather, a court must employ an objective analysis to determine what effect, if any, "Dookhan's misconduct was likely to have had on [defendant's] chances at trial." Merritt, 755 F.3d at 10; see also Wilkins v. U.S., 754 F.3d 24, 28 (1st Cir. 2014).

The Wilkins and Merritt decisions provide instructive guidance on this analysis. The defendants in those cases, Larry Wilkins ("Wilkins") and Ronald Merritt ("Merritt") (jointly "appellants"), received lengthy prison sentences after they pled guilty to Possession with the Intent to Distribute crack cocaine. Id. at 26. The charges were brought after appellants sold crack cocaine to an undercover Boston Police Officer. The officer gave Merritt $40 and then watched him walk across the street toward Wilkins. Wilkins handed something to Merritt, who then walked back across the street and gave the officer a

plastic bag containing what appeared to be crack cocaine. Officers then arrested and searched appellants incident to the arrest. From Wilkins, officers seized the $40 used to facilitate the undercover purchase, as well as 36 bags of what appeared to be crack cocaine. Officers field-tested one of the bags and confirmed that it contained crack cocaine. All of the bags were then forwarded to the Hinton lab where Dookhan certified that the bags contained crack cocaine. Id. at 26-7.

Shortly thereafter, appellants moved to withdraw their pleas based on the Dookhan's misconduct, prompting the government to commission a retest of 13 untested bags seized incident to appellants' arrest. While all 13 bags tested positive for cocaine, appellants continued to maintain that they would not have pled guilty had they known about Dookhan's unlawful activity. Id. at 27. Appellants' counsel also contended that they would not have advised their clients to plead guilty had they known the magnitude of Dookhan's misconduct. Id.

The Court of Appeals for the First Circuit denied the motion to withdraw based on appellants' failure to demonstrate materiality. Id. at 28; Merritt, 755 F.3d at 10. The Court concluded that the government's evidence would have been sufficient to prove appellants' guilt, with or without Dookhan's drug certifications. The "prototypical street corner drug buy,"

positive field test and stockpile of suspicious bags seized from Wilkins constituted "overwhelming" circumstantial evidence of appellants' guilt. Wilkins, 754 F.3d at 29; see also Merritt, 755 F.3d at 10. Furthermore, appellants admitted that the contraband seized incident to their arrests was, in fact, crack cocaine and neither attempted to discredit the admission or make a claim of factual innocence. Id. at 11; Wilkins, 754 F.3d at 30 (noting that an admission "is entitled to significant (albeit not dispositive) weight when...[the offender] seeks to vacate [his] plea through a collateral attack."). The Court concluded that, given the results of the second drug test, any attempt to argue that the substance was not what it was purported to be would fail and the Dookhan scandal by itself did not provide appellants a defense.

There are two noteworthy differences between the facts in Wilkins and Merritt and those in the instant case. First, in this case, the government did not commission a retesting of the substances seized from the residence. Nevertheless, the government contends and defendant acknowledges that courts often refuse to reverse convictions where drug composition was proven by circumstantial evidence. See e.g., U.S. v. Valencia-Lucena, 925 F.2d 506, 512 (1st Cir. 1991) (finding it unnecessary to perform chemical analysis where circumstantial evidence of drug identity was sufficient); U.S. v. Walters, 904 F.2d 765, 771

(holding that the testimony with respect to defendant's acquaintance was sufficient to establish drug identity). In this case, the probative circumstantial evidence is derived from a field test conducted immediately after the search of the residence, observations made by an experienced narcotics investigator who concluded that the substance was indeed crack cocaine and the general unlikelihood that defendant would jeopardize his personal safety and business by selling counterfeit drugs.

Second, the evidence in this case did not include an undercover purchase and therefore the government's case could not be bolstered by the direct observation of a law enforcement officer. Instead, the government would have likely offered the testimony of Ms. Richards to substantiate the charge that defendant operated a sizable drug operation. Defendant contends that her credibility as a witness would have been subject to vigorous cross-examination based on her receipt of a favorable state court plea agreement and immunity from federal prosecution. While such revelations might have been harmful to the government's case, they do not rise to the level of outcome determinativeness contemplated by <u>Ferrara</u> when considered alongside the panoply of untainted circumstantial evidence against defendant.

Aside from the two distinctions discussed above, the facts in this case are nearly identical to those in Wilkins and Merritt. Similar to the defendants in Wilkins and Merritt, Smith offers no direct evidence showing that Dookhan's misconduct marred the contraband seized from the residence, nor does he make a claim of actual innocence. Defendant also admitted under oath at his change of plea hearing that the drug seized was crack cocaine. Moreover, the overwhelming circumstantial evidence gave defendant "strong incentives" to plead guilty. See U.S. v. Wilkins, 943 F. Supp. 2d 248, 251 (D. Mass., 2013). That evidence included (1) telephone records and visual observations made by investigating officers that denoted the presence of a high volume drug operation taking place at 227 Washington Street, (2) a controlled purchase of crack cocaine, (3) defendant's physical presence at 227 Washington Street during the search that yielded drugs and other paraphernalia, (4) the positive field test for cocaine and (5) the statement made by Ms. Richards detailing defendant's extensive drug activity.

Finally, the Court agrees with the government that the need to prove the identity of the substances seized from defendant is reduced because one of the three charges to which defendant pled guilty was conspiracy to possess cocaine base with intent to distribute. The government need only prove that there was an

agreement to procure and distribute drugs to prove the conspiracy. See United States v. Cotal-Crespo, 47 F.3d 1, 6 (1st Cir. 1995). Here, the presence of the defendant during the drug raid which netted cocaine base, the seizure of items used to weigh, package and sell cocaine, telephone records suggesting high volume drug sales and the testimony of Ms. Richards that she was involved in drug trafficking offer ample evidence supporting the defendant's conviction on the drug conspiracy count.

Based on the solid evidence against defendant, the Court concludes that the recently discovered evidence objectively would not have changed the outcome of a trial because it is not reasonably probable that Dookhan's misconduct influenced defendant's decision to plead guilty. The weight of the evidence, along with the alluring benefit of a substantially reduced sentence, provided defendant with more than enough motivation to plead guilty, regardless of drug certificates. Accordingly, defendant fails to show materiality and is not entitled to relief.

## ORDER

For the foregoing reasons, defendant's motion to withdraw his guilty plea and vacate his conviction under 28 U.S.C. § 2255 (Docket No. 111) is **DENIED** and his petition for habeas corpus is **DISMISSED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated December 15, 2014